## RICE *v.* UNITED STATES.

APPEAL FROM THE COURT OF CLAIMS.

Submitted January 3, 1887.— Decided March 7, 1887.

The appellant, on the 17th February, 1886, filed his petition in the Court of Claims, setting forth his appointment as assignee in bankruptcy of one Robert Erwin and of Hardee, his partner in business in Savannah; that Erwin in 1864 and in 1865 was the owner of a quantity of cotton, in the state of Georgia, which was seized and captured and the proceeds of which passed into the Treasury of the United States; that Congress, on the 5th February, 1877, passed an act to permit the Court of Claims to take jurisdiction of the claims of Erwin for this cotton, his right of action therefor being then barred; that at the time of the passage of that. act Erwin's said claims had passed into the hands of his assignee, and were a part of his assets in bankruptcy; and that this suit was brought in pursuance of the special act; and he prayed judgment for the amount in the Treasury. The United States demurred to this, and also moved to dismiss the petition. The Court of Claims dismissed the petition. On appeal that judgment is affirmed by a divided court.

THIS was an appeal from a judgment of the Court of Claims dismissing the petition of the appellant.

By the act of February 5, 1877, entitled "An act for the relief of Robert Erwin," 19 Stat. 509, Congress enacted: "That the Court of Claims may take jurisdiction under the provisions of the act of March 12, 1863, entitled 'An act to provide for the collection of abandoned property and for the prevention. of frauds in insurrectionary districts within the United States,' of the claims of Robert Erwin, of Savannah, Ga., for property. alleged to have been taken from him, which claims were by accident or mistake of his agent or attorney, and without fault or neglect on his part, as is claimed, not filed within the time limited by said act."

Under this act Erwin, who had become a bankrupt after his property was seized by the military forces of the United States, brought suit in his own name in the Court of Claims. His petition was dismissed there on the ground that the title to the property was in the assignee, and this judgment was affirmed on appeal. 97 U. S. 392.

His assignee in bankruptcy then brought this suit. The petition was filed on the 17th February, 1886, and was as follows:

"To the honorable the Court of Claims:

"The claimant, Lepine C. Rice, a citizen of the United States, resident in the city of Savannah, in the state of Georgia, respectfully represents:

"1. Under the provisions of the Revised Statutes of the United States, title Bankruptcy, he is the duly appointed and qualified assignee of Robert Erwin and Charles S. Hardee, late partners trading as Erwin & Hardee, in the said city of Savannah, as appears more fully from certified copies of the adjudication of bankruptcy, and of the order making his appointment, herewith filed, marked, respectively, Claimant's Exhibit, L. C. R. No. 1, and L. C. R. No. 2, and as such assignee he now brings this suit for the benefit of the trust so reposed in him.

"2. The said Robert Erwin, then a citizen of the state of Georgia, on the 21st day of December, 1864, was the exclusive owner, in his own right, of two hundred and eighty-three (283) bales of upland cotton stored in the said city of Savannah, which on or about that day was seized and captured by persons duly authorized and acting in behalf of the United States, and the proceeds of the sale made thereof, amounting, as is believed and it is here charged, to the net sum of forty-nine thousand six hundred and eighteen dollars and thirty-nine cents ($49,618.39), were paid into the Treasury of the United States, pursuant to the provisions of the act of Congress, approved March 12, 1863, c. 120, commonly called the captured and abandoned property act.

"And on or about the 1st day of July, 1865, he was also the owner exclusively and in his own right, of another lot of two hundred and sixty one (261) bales of sea-island cotton then stored at and in the warehouse of Evans & Parnell, in the town of Thomasville, in said state of Georgia, which on or about that day was also so seized and captured by persons duly authorized and acting in behalf of the United States,

was removed to and stored at the 'Government cotton press' in the city of Savannah, where it remained in the custody of said agents of the United States until in the month of August following, when it was by them forwarded, upon the schooner Enchantress, to Simeon Draper, the United States Treasury agent in the city of New York, by whom it was subsequently sold for the account of the United States, and the proceeds thereof, amounting, as is believed, and it is here charged, to the net sum of one hundred and nineteen thousand eight hundred and fifty-seven dollars and thirty-four cents ($119,857.34), were duly accounted for by said Simeon Draper, and were paid into the Treasury of the United States in conformity with the said captured and abandoned property act.

"3. On the 31st day of December, 1868, the firm of Erwin & Hardee, of which said Robert Erwin was a member, filed their petition in bankruptcy under the provisions of the acts of Congress relating thereto, in pursuance of which, on the 15th day of January, 1869, they were duly adjudged bankrupts, as more fully appears in Exhibit L C. R. No. 1.

"And in the proceedings had in such bankruptcy one Robert H. Footman was appointed and qualified as assignee of said Erwin & Hardee, and proceeded in the administration of the trust until February 23, 1877, when, upon his resignation thereof, your petitioner, the claimant, as appears more fully from Exhibit L. C. R. No. 2, was appointed to succeed him, and was duly qualified as assignee of said bankrupts; and the claimant now avers that under and in virtue of the assignment in bankruptcy of the property and estates of said Erwin & Hardee and each of them, and of the proceedings had in the court in that regard, the claims of said Erwin, hereinbefore mentioned, against the United States, and for which this suit is prosecuted, became and now are vested in the claimant, who is now duly qualified and acting as assignee of said bankrupt as is hereinbefore alleged.

"4. Inasmuch as the right of said Erwin to maintain the action provided in the said captured and abandoned property act for and upon the said claims was barred by the limitation of suits under said statute, a special act of Congress was passed

and became a law as of and on the 5th day of February, 1877, the same being entitled 'An act for the relief of Robert Erwin,' being found in 19 Stat. 509, which enacts and reads as follows:

"'Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That the Court of Claims may take jurisdiction under the provisions of the act of March twelfth, eighteen hundred and sixty-three, entitled "An act to provide for the collection of abandoned property and for the prevention of frauds in insurrectionary districts within the United States," of the claims of Robert Erwin, of Savannah, Georgia, for property alleged to have been taken from him, which claims were by accident or mistake of his agent or attorney, and without fault or neglect on his part, as is claimed, not filed within the time limited by said act.'

"5. The claimant now avers that under and because of said last-recited act of Congress jurisdiction was given anew to this court to hear and determine the said claims of the said Erwin in the manner and by the proceedings provided in the captured and abandoned property act. But at the time of the enactment of said law all the property and rights of said Erwin which existed on the 31st day of December, 1868, had vested, as aforesaid, in his assignee in bankruptcy; and the said claims, then and now, were and are assets of the estate of said Erwin in bankruptcy, for which the claimant alone as such assignee could, or now can, maintain the proceedings prescribed by said captured and abandoned property act, and under and in virtue of the said special and enabling act hereinbefore recited. And he now comes and brings this suit in pursuance thereof.

"6. He further avers and charges that the said cotton was never abandoned nor condemned as forfeited to the United States; but that the said United States retains the net proceeds thereof only as trustees for the owner thereof; and in and by the said private act, as herein recited, it has recognized the claimant's right to the proceeds thereof, upon the preferment of his claim in conformity with the provisions of the said captured and abandoned property act.

" 7. He further avers that, except the assignment made. as required by the bankrupt act, no assignment has been made at any time of the said claims or either of them, or of any part of them or either of them, but the same remain as assets of the said bankrupt estate; and he now claims payment thereof for the benefit of the said estate; and as such assignee he charges that he is justly entitled to have and receive the amounts herein claimed from the moneys in the Treasury of the United States, so held in trust for the benefit of those who shall establish their claim to it under the provisions of the captured and abandoned property act.

"He therefore prays for judgment against the United States for the proceeds of the said cotton, so as aforesaid seized for and under the authority of the said United States, of which at the time of its seizure the said Robert Erwin was sole owner, and which was so sold, and the net proceeds of which, amounting in the aggregate to the sum of one hundred and sixty-nine thousand four hundred and seventy-five dollars and seventy-three cents ($169,475.73), have been paid into the Treasury, and now remain there as a part of the fund arising under said act.

> Albert Small,
> *Attorney and Solicitor for Claimant.*
> Shellabarger & Wilson,
> *Of Counsel.*"

The United States, by its assistant attorney general, on the 19th April, 1886, moved to dismiss this petition, and also at the same time demurred to it on the ground that it did not allege facts sufficient to constitute a cause of action.

Argument was heard on the motion and the demurrer together, and judgment was entered for the dismissal of the petition.

Richardson, C. J., delivered the opinion of the court, in which, among other things, it was said : "The defendants file a motion to dismiss for want of jurisdiction, and also a general demurrer, under each of which three objections are raised against the claimant's petition —

" (1) It is argued that the act under which the suit is brought was, in the words of the title, ' for the relief of Robert Erwin,' and not for his creditors through the assignee in bankruptcy previously appointed, and that the latter acquired no rights, thereby, both because the act was intended for him, *Ogden* v. *Strong*, 2 Paine, 584, and because the right to sue was a valuable right or privilege acquired after the appointment of the assignee, and did not pass by the assignment.

" (2) It is also argued that an assignee in bankruptcy has no right to keep the estate open and bring actions nine years after his appointment. Rev. Stat. § 5057; *Bailey* v. *Glover*, 21 Wall. 342, 346; *Walker* v. *Towner*, 4 Dillon, 165.

" We express no final opinion on these two points, although we are inclined to think that one of them, at least, is well taken. They merit serious consideration, and could not be passed by did we not prefer to rest our decision upon the third objection, which concerns more particularly the jurisdiction of this court. But they will be open to the defendants in the Supreme Court on appeal, if the case should go there.

" (3) The third objection is that the claim, under the act of 1877, accrued more than six years before the filing of the petition, and so is forever barred by the following section of the Revised Statutes, which was held by the Supreme Court in *Haycraft's Case*, 22 Wall. 81, and 10 C. Cl. 108, to be jurisdictional.

" SEC. 1069. Every claim against the United States cognizable by the Court of Claims, shall be forever barred unless the petition setting forth a statement thereof is filed in the court, or transmitted to it by the Secretary of the Senate or the Clerk of the House of Representatives as provided by law, within six years after the claim first accrues.

" *Provided*, That the claims of married women first accrued during marriage, of persons under the age of twenty-one years first accrued during minority, and of idiots, lunatics, insane persons, and persons beyond the seas at the time the claim accrued, entitled to the claim, shall not be barred if the petition be filed in the court or transmitted, as aforesaid, within three years after the disability has ceased; but no other disability than those enumerated shall prevent any claim

from being barred, nor shall any of the said disabilities operate cumulatively.

"A claim 'first accrues, within the meaning of the statute, when a suit may first be brought upon it, and from that day the six years' limitation begins to run. Any suit under the act of February 5, 1877, might have been instituted by filing a petition within six years after that date. That time has long since passed, and the present claimant has lost his rights thereunder, if he ever had any, unless his case is taken out of the operation of § 1069 of the Revised Statutes in either of two ways which his counsel present.

"In his behalf it is insisted that the section applies only to claims which came under the general jurisdiction of the court before its enactment, and not to claims founded upon special acts subsequently passed. We do not concur in this view. A similar doctrine in relation to the right of appeal under § 707 of the Revised Statutes was considered by the Supreme Court in *Zellner's Case,* 9 Wall. 244, and 7 C. Cl. 137. The court said: 'We cannot agree to the view that the general provision in the fifth section of the act of March 3, 1863, reorganizing the Court of Claims and conferring what may be called its general jurisdiction, cannot be invoked in this case. The language of the section is general: "Either party may appeal to the Supreme Court of the United States from any final judgment or decree which may hereafter be rendered in any case by said court." This court was organized as a special judicial tribunal to hear and render judgment in cases between the citizen and the government; the subjects of its jurisdiction were defined in the act, and generally the mode of conducting its proceedings, subject, of course, to such alterations and changes as Congress from time to time might see fit to make. The subjects of its jurisdiction could be enlarged or diminished, but this would not disturb or in any way affect the general plan or system of its organization. If new or additional subjects of jurisdiction were conferred, the effect would be simply to increase the labors of the court, the case to be heard and determined under the existing organization.'

"In *McKee's Case,* 10 C. Cl. 208, the Supreme Court held ex-

pressly that ' Section 707 of the Revised Statutes gives to the United States the right of appeal from the adverse judgments of the Court of Claims in all cases where that court is required by any general or special law to take jurisdiction of a claim made against the United States and act judicially in its determination.' 91 U. S. 442. And the Supreme Court took jurisdiction of an appeal from this court upon a judgment rendered against Robert Erwin under this very act of 1877, although the only authority for it was found in § 707 of the Revised Statutes. *Erwin* v. *United States*, 97 U. S. 392.

" There is no distinction in principle between the application of the right of appeal under § 707, to special acts of legislation subsequently passed, and the application of the limitation of § 1069 to such cases.

" The act of 1877 created a new and additional subject of jurisdiction and a new cause of action, by reviving an expired one, and in our opinion the general statute of limitations, as well as the general right of appeal, attaches and applies to it ; just as when part payment on a promissory note takes a right of action thereon out of the statute, such right is not forever after relieved from all limitation, but the statute begins to run anew from the date of such payment.

" It is now more than nine years since this court was opened anew to the rightful claimant, whoever he may be, under the act of 1877, and, according to the construction urged by the present claimant, it is never to be closed until he be found, and of his own motion comes in and files his petition, a construction which, in our opinion, is unreasonable and not to be adopted.

" While Congress has declared a general limitation of six years for ' every claim cognizable by the Court of Claims,' and a still shorter one of two years, for claims under the captured or abandoned property act, it is unreasonable to infer that it intended to confer upon every claimant under the act of 1877 — and the present one is the second who has appeared, *Erwin's Case*, 13 C. Cl. 49, affirmed on appeal, 97 U. S. 392 — the unusual and extraordinary privilege accorded to no other citizen, of bringing an action against the government at any future

time without limitation. Such a construction would be in conflict with all idea of repose, which is said to be the object of statutes of limitation, and to the general policy of Congress in all other cases.

"It was said in *Clark's Case*, 96 U. S. 37, 11 C. Cl. 702, decided a year before the passage of the act of 1877 now under consideration: 'It is not to be doubted that subsequent subjects of jurisdiction would be subject to the provisions of the statute of limitation if they were in the nature of money demands against the government.' This was then and has ever since been the settled doctrine of this court, and we have no doubt Congress so understood it when the act of 1877 was passed.

"That the present claim, under that act, is a money demand against the government, and nothing else, we shall demonstrate beyond question, we are quite confident.

"But the claimant argues that the property received and sold, and the proceeds thereof in the Treasury, under the peculiar legislation of the captured or abandoned property act of March 12, 1863, 12 Stat. 820, are trust funds, of which the defendants are merely trustees, and are subject to the rules and practice of courts of equity in relation to equitable trusts, one of which is, that statutes of limitation do not run as between trustee and *cestui que trust.*

\*     \*     \*     \*     \*

"A trust in which the so-called trustee may legally mingle the trust money with his own, employ it for his own use, and himself determine whether he will forever retain it, or will give it to others, is a singular trust, unknown to law or equity, and to which no principles of equity jurisprudence can be found to apply.

"It is a universal rule of equity that if a trustee mingles trust money with his own and uses it for his own benefit, he shall account for or pay interest thereon to the *cestui que trust.* Story's Equity, §§ 1277, 1277 *a*; Perry on Trusts, § 468.

"But it is provided in Revised Statutes as follows:

"'SEC. 1091. No interest shall be allowed on any claim up to the time of the rendition of judgment thereon by the

Court of Claims, unless upon a contract expressly stipulating for the payment of interest.'

"This court has always applied that section to cases under subsequently enacted special acts and to those under the captured or abandoned property act.

\*        \*        \*        \*        \*

"In *Taylor's Case*, 104 U. S. 216, 222, the Supreme Court called the United States trustees of the surplus money paid into the Treasury from the sales of lands for taxes under the direct tax acts, 12 Stat. 292, 422, 640; 14 Stat. 568, over and above that which was required to pay the tax, interest, and costs. That court did not treat the case as one in equity, and upon a finding of facts by this court, as in cases at law, they held, as to the statute of limitations, that 'the right of the owner of the land to recover the money which the government held for him as his trustee did not become a claim on which suit could be brought, and such as was cognizable by the Court of Claims, until demand therefor had been made at the Treasury. Upon such demand the claim first accrued,' and the statute of limitation began to run. So in the present case, a suit cognizable by the Court of Claims could not have been brought after the limitation of the captured or abandoned property act had expired, until the passage of the act of 1877 specially authorizing it, and from that time the statute of limitation began to run and had run out long before the claimant came into court."

Nott, J., dissented from this judgment and opinion, and filed a dissenting opinion. The following is an extract from it:

"The plain and simple question in this case is whether the statute of limitations, Rev. Stat. 1069, applies to that subject of jurisdiction known as the captured property cases.

"In *Haycraft's Case*, 22 Wall. 81, the counsel for the claimant asked the same question, and the Supreme Court answered that it did not.

\*        \*        \*        \*        \*

"What, then, is the condition of the claimant's case?

"On the 20th of August, 1868, Robert Erwin was the equita-

ble owner of a fund in the Treasury, of which the equitable title had never been divested from himself, being then held by the government as his trustee. On that day he might have instituted a suit for the fund, but on that day the jurisdictional period for instituting such suits expired. A provision of law confining jurisdiction to a certain period no more affects the party or the cause of action than a provision of law confining jurisdiction to a certain territory. Therefore Erwin's right to the fund did not expire with the right of the court to entertain his case. The effect of the statute was simply that on that day as to such cases the door of the court was shut.

" On the 5th February, 1877, Congress reopened the door by passing the private act, 19 Stat. 509. The original abandoned or captured property act said that the door should stand open for two years; the private act set no limitation of the kind, but leaves it open still, and still continues to declare that 'the Court of Claims may take jurisdiction' of the claim. The private act does not recreate the claim; it does not validate it; it does not remove any presumption of payment from it; it simply opens the door of the court and allows whoever may be entitled to do so to bring the claim in.

" Why, then, should not the claim be heard? The grant of jurisdiction has not expired; the private act has not been repealed; it still continues to say 'the Court of Claims may take jurisdiction under the provisions of the act of March 12, 1863,' 'of the claims of Robert Erwin;' why, then, should not the Court of Claims take jurisdiction and adjudge the case?

" The counsel for the government answers that the general statute of limitations applies to this demand and bars the suit.

" If the statute of limitations applies so as to preclude a trial upon the merits, it must apply not to the door of jurisdiction, but to the claim itself. Statutes of limitation are statutes of repose which do not extend to courts nor affect jurisdiction, but which attach to a debt or demand a presumption of payment, and operate to extinguish the thing itself as completely as if payment had been made. Therefore, if the statute of limitations applies to this claim, neither Robert Erwin, nor his

assignee, nor any other person can ever assert a right to the fund derived from his cotton. All other claimants can; but this claim must be considered in law as actually paid and extinguished. It is conceded that the claim was not so extinguished when the private act was passed; it is conceded that none other of the thousands of claims which are still outstanding upon the captured property fund is presumptively or legally extinguished by the statute of limitations. Why, then, is this? How is it possible that Congress by passing an act, without the solicitation of the legal owner of the claim, the present claimant, authorizing a court to take jurisdiction of a case and nothing more, can have attached to the claim itself another statute not previously applicable to it, which should in time work out a legal presumption of payment and an absolute extinguishment of the claimant's rights?

"If it be asked whether this thing can go on forever, the answer seems a very plain one. Congress did not here pass a general act, nor an act affecting a class of claims, but made a grant of special jurisdiction for the benefit of a single, isolated case; the act of grace and favor did not confer a right, but provided a remedy; Congress can take away the remedy at any time without trenching upon the claimant's rights.

"The counsel for the claimant has supposed that in the administration of the abandoned or captured property act the fund in the Treasury was treated by this court as a fund in equity, and the counsel is right in his supposition. Considering that it dealt with millions and must involve some of the most perplexing questions that could possibly be brought before a court, that act was in one particular probably the most extraordinary statute that was ever enacted. All that relates to the jurisdiction and duties of the court, and to the rights and disabilities of the parties, is to be found in nine lines which are thrust into a section primarily relating to the bonds and books of account of agents of the Treasury. The judges who had to bear the heat and burden of that day in determining principles, in devising remedies, in framing a system which should be commensurate with the necessities of the situation — that is to say, the judges who administered the statute from the

Decision.

case of *Tibbitts*, in 1 C. Cl. 169, to the case of *Boyd*, in the ninth volume (p. 419), had an absolutely novel subject of jurisprudence assigned to them without one word of statutory guidance to direct them and without a precedent to be gathered from all the courts in the world.

" Whatever may be thought of the wisdom of their conclusion, one thing is incontrovertible, and that is, that they, eventually, believed the fund in the Treasury to be a fund in equity, and that they exercised in regard to it whatever power of a court of equity might be necessary to protect the fund. The interlocutory proceedings, 4 C. Cl. 486 ; 5 id. 645, and the final decree, 7 id. 605, in the *Elgee Cotton Case*, and the decree in the case of *Rothschild*, 6 C. Cl. 244, will illustrate to any lawyer with any knowledge of equity jurisdiction that the court was dealing with rights and remedies which belong to the discretionary powers of a court of equity, and which are not the rights and remedies that come within the inflexible jurisdiction of a court of law. Some attempts have been made to show that courts of law have dealt with implied trusts in some such way, but the only authorities that could be found were Bacon's Abridgment, and Reeve's History of the Common Law, and they, unhappily, related to a time when the court of chancery did not exist as a court of equity, and when the system of equity jurisprudence was not yet devised.

" But I do not regard the statute of limitation as necessarily exclusive of equity cases. I place my conclusion here entirely upon the ground that the private act granted a remedy ; that the remedy was not limited as to time, and that there is no law which attaches to this claim a presumption of payment."

*Mr. Albert Small, Mr. Samuel Shellabarger, Mr. J. M. Wilson, Mr. Charles N. West,* and *Mr. Charles Marshall* for appellant.

*Mr. Attorney General* and *Mr. Heber J. May* for appellee.

Mr. CHIEF JUSTICE WAITE announced that the judgment of the Court of Claims was

*Affirmed by a divided court.*